My name is Daryl Dunham. I'm representing the account of Mr. Crosby. I know that I've been informed that you're all familiar with the facts, but I think because this case is pretty fact-intensive, I'd like to spend a little more time than I normally would going over the facts. My client worked for SIPC. Anyway, he worked for SIPC. I don't think there's any dispute between the parties. He had a pathology with regard to his neck. He claims that three of the pathologies were work-related. One occurred in 2011. It's important for purposes of this case, the court understands, that from the key time period, January 1, 2013, through January 1, 2015, that that case hadn't been set. And then in the summer of, I think it was January of 2013, he had an accident where his vehicle hit a deer. His chiropractor testified at the trial that that contributed to the pathology with regard to his neck. And then he reported an accident which subsequently filed a claim on April 4, 2014. And then again, which he filed, actually filed sooner, claimed an injury on September 30, 2014. All, I think, aggravation of pre-existing conditions. Now, it's also important, I think, that the court understand the collective bargaining agreement that was in place with SIPC. There's, for our purposes, there are four different types of leaves, I guess the absence of six, the reason for not being able to work, that are available.  Number two, there's workers' comp. Number three, there is sick leave. And there's also family sick and also sick leave for the employee himself. The way SIPC works, it's kind of a self-recorded system. Employee goes to work and then he fills out a timesheet in the appendix. You'll see a lot of these timesheets. There's a timesheet, for example, at A73, appendix page 73, another one at 74, another one at 75. So you get an idea how that works. In most instances, the employee will designate which kind of absence that he or she is claiming. And that's very important for this case. I don't think there's any dispute that with regard to workers' compensation, the leave is unlimited, that there isn't any prohibition in the collective bargaining agreement saying, well, you can only claim so many hours, so many days. There's no such limitation. Now, with regard to vacation, that is limited. I don't think there's any dispute that at the time my client was terminated, he had 35 days of vacation leave that he could have taken. Well, what happened is the first event that occurred, and you can see this in the appendix at 73, my client filled out a timesheet because he had this existing pathology with regard to his neck where he was claiming that he should be entitled to take workers' compensation time for that. And there was a meeting, and even the union steward was there, my client was there, administrative officials were there, and they said, no, we're not going to allow you to do that. You're going to have to take this as sick leave. And then you can even see on that sheet that they changed the leave from workers' compensation and then in their reign, not my client's reign, they changed it to sick. Well, my client, as a result of this meeting, frequently, I don't think there's any dispute about this because we called the chiropractor in, frequently what he would do is that he would go to work, particularly if he worked like three or four days in a row, and if he had worked overtime, his neck would start to give out, he would leave early, and he'd go to his chiropractor to get treatment. It wasn't always the chiropractor, but mostly the chiropractor. Can I interrupt you here? At this point now, had there been a work comp claim? Yes. There was a work comp claim pending throughout. The time, the area, the analysis of my client's attendance record began January 1, 2013 and extended all the way into January of 2015. And what happened was, is that there's three administrators at SIPC that testified that were important witnesses. One was Mr. Gulley, who was the CEO. He's not really that significant in our opinion. There was Diane Carnes, who was an HR lady. And then there's Todd Goldenbeck, who was the one that was the primary person that took it upon himself, I believe, to do this analysis of my client's time sheet. And what he did was, he doesn't identify in the trial, but he got some kind of message from somebody, we don't know who, at least he claims he doesn't know who, that prompted this so-called investigation. So what he did was, he went back and he looked at my client's attendance records, put them on calendars for each month and made a designation for each day, and then displayed them on an overhead projector in January of 2015. He made two presentations, one to a body of administrators and there were some union people there. Why they were there, as it turns out, is an enigma to me, because there's no evidence that there was any vote taken or anything like that. And then after those people left the room, my client came in with his union representative and they made this presentation a second time. Now, my client was terminated. We believe the sole and only reason he was terminated was for abuse of sick leave. And the reason we believe that is that in the appendix, if you look at appendix page 8A, there's a letter. And the letter cites section 7.03 of the Collective Bargaining Agreement. And then if you also look in the appendix A-77, there's a, A-10, I'm sorry, there are answers to interrogatories. Interrogatories state each and every reason why McNally was terminated. Again, 7.03. You look at 7.03, that's set out in page 77 of the appendix, and it says abuse of sick leave, which is an event that can be terminated, can result in termination. Now, if you'll note in my opening brief, I cite three and only three cases, because I want to say, I think it's very important that the court focus on the sole reason that we're taking this appeal. We filed a motion for seminary determination of facts, which was denied. And then we also asked for some jury instructions. And here's why. This court, several years ago, in the Clark versus Owens-Brockway case, still good law, still frequently cited. Basically, the facts of that case were, employee filed a workers' compensation claim, employer hired a private investigator to follow the employee, take some videotape of the employee. Employer, in light of this videotape, concluded that the employee was malingering, had filed a fraudulent claim, and fired him. And this court affirmed a motion for seminary judgment in favor of the plaintiff. And the reason was that the employer had arrogated to himself the determination as to whether the claim was fraudulent, whether that was malingering, and admitted that was the sole reason why the employer had been fired. And this court ruled that that is retaliatory discharge as a matter of law in light of the admissions. Why? Because it's not for the employer to make these determinations. That's for the workers' compensation commission. And so, they granted seminary judgment. Now, next case, this court, in the Holloway decision, and that was a slightly different wrinkle. But we get the same result because we should get the same result. In that case, the employee filed a workers' compensation claim. And then what happened was, and the employee remained off work, was off work because his treating physician said, this person shouldn't work. And I'm advising him not to work until his treatment reaches maximum medical improvement. Well, the employee or, in that case, had sent him out for an independent medical examination. The IME said, I disagree with the treating physician. This person can work. And it's not causally, the injuries are not causally related to anything that's happened at work. And so, the employer, arrogated to itself, now, this time armed with an opinion from an IME, and said, we're going to believe our IME. We're not going to believe the treating physician. And so, since the person did not work, since the employee decided to follow the advice of his treating physician, they fired him. This court cited Clark, came along, said the same thing. This is a retaliatory discharge. You have basically admitted that it's the reason for the termination as related to his workers' compensation claim and granted judgment as to liability to the employer. Again, it's not up to the employer to be making these decisions. That's why we have the commission. That's it's to the commission to be resolving these disputes. Now, I come along and recite the Grabs v. Safeway case. This is not the case of this court. But it's the case, and frankly, it's been very frustrating to the appellant, the employee here, why the analysis has not been engaged by the trial court and why I have never been told in reasons that is explicit why my thinking, why our analysis is wrong. And in fact, I don't think there's been an explanation in the appellee's brief either. But what happened in that case, it was a similar sort of thing in Grabs. IME takes a dispute with what the treating physician says, and the trial court granted summary judgment after reconsideration in favor of the employee E and it went up to the first district on certifying question. And what the strategy was by the employer in that case is they said, we're going to believe the IME. We're not going to believe the treating physician. And so what we're going to do is we're going to remove the employee from the worker's compensation leave role. We're going to move that in those employees, there was two of them, to the active employee role. And since they were no call, no show for three days, fired them. And so that's what happened. Now, these are not identical facts. But I would contend, we believe, we've been asserting throughout that the facts of this case are even stronger. And here's why. In this case, the employer didn't send McAnally, the employee, out for an independent medical examination and say, look, is this pathology here related to work? Should he be taking worker's compensation leave? Is he capable of working? Should we have to pay for any of these treatments, anything like that? No, they didn't do that. Who made the decision that McAnally couldn't take these treatments for his chiropractor? There was one treatment for an orthopedic surgeon down in Nashville. There was a couple of treatments for a method therapist. Who made that decision? It was made by Diane Carnes, the HR lady, and Todd Golombek. They're the ones that made that decision. Now, where do they get that right? Where do they get that power? On what basis did they make that decision? And the answer is it's never been offered. And so we contend that the McAnally case, this case, is just a natural extension of what this court originally determined in Clark. This is just a natural extension of what this court determined in Howell. This is just a natural extension of what the First District did in the Graves case. Now, in the athlete's brief, in fact, I challenged them. I asked them. I begged them, essentially. I said, can you explain to the appellate court, which you never did in the trial court, can you explain what the distinction is between Graves and this case? And you know what the distinction was offered? The distinction that was offered by the appellee in their brief was, well, Graves was a case that determined whether or not a, quote, per se rule should be adopted. Now, that was confusing to me at the time,  What they mean by that is, per se rule means that, does the employee get summary judgment as a matter of law without doing any factual investigation? Well, there's two problems with that approach. Number one, the Graves case, that wasn't anything to do with the certified question. The certified question in Graves, they weren't asked to answer the question, should the per se rule apply? And I'm going to get back to that in a moment. But this court in Clark didn't refrain from adopting a per se rule. The only reason this court in Clark granted the plaintiff the relief that the plaintiff was asking for was because the defendant, the employer, admitted that was the sole reason. And given that admission, the appellate court didn't feel like he had any other choice. Same thing happened in Holloway. Well, here is the question that was posed to the first district. Does the Workers' Compensation Act give the Illinois Workers' Compensation Commission the exclusive authority to determine whether an injured employee may return to work, such that when an employer is faced with conflicting medical opinions from the employee doctor and the employer's IME, to terminate the employee under the employer's attendance policy for failure to return to work before the commission has adjudicated the pending dispute on conflicting medical opinions? That's the question. And this is the answer. For the following reason, we find that when an employer is faced with conflicting medical opinions from the employee's doctor and from the employee's IME, an employer may not rely solely on an IME in terminating an employee for failing to return to work or for failing to call his absences. We decline to find that per se standard exists. Now, that wasn't even the question that was asked of them. Now, we're not asking for a per se standard. Can't. Here's why. Because there were other reasons that Gollenbeck in his presentation said was an abuse of sick leave. See, they didn't even put out any evidence as to which days were existent. What we did was I had my client read Gollenbeck's deposition, and then he testified for the jury because Gollenbeck listed 19 instances where a sick leave was allegedly abused. Wasn't there an agreement at some point in the process by your client and his representative that, yes, there had been an abuse of sick leave? No. Categorically denied. And I point that out in my reply brief. Now, yes, the union had testified that way, but my client denied making that admission under any circumstances. So there was no such agreement. All they had was the testimony of a union rep, which was denied. Thank you. May it please the Court, Counsel. My name is Tom Crosby. I represent Southern Illinois Power Cooperative situated in Williamson County. This case was subject to a jury trial. At the conclusion of the trial, the jury decided that there was no retaliatory discharge. Counsel has appealed the denial of a motion for summary determination of fact. It's the position of the appellee, and I believe the law of this state, that that is an interlocutory appeal and that there is no appellate jurisdiction to review saying. Now, they also appealed the denial of two directory argumentative instructions that weren't given because the Court had already denied the summary determination of fact. Those instructions were based on the proposition that had the Court allow the summary determination of fact, it should have given these two instructions. If you look at the instructions, you'll see that they're improper in their form. So why are we here? There is no appealable issue. Now, the refusal to grant a motion for summary determination of fact, and I pointed out in the brief, can sometimes, if mislabeled, if it was actually a motion for summary judgment, can be appealed. This is not such a case. So we have not only the fact that it's a strictly interlocutory order, but also the fact that if we consider it to be a motion for summary judgment, which it was not, the merger doctrine prevents it from being appealed simply because when all the evidence was presented, it was determined that there was no retaliation. And I am not going to go into the facts that show that there was an adequate reason for terminating Mr. McAnally, other than to say that during the period of time that counsel suggests is relevant here, from January of 13 to January of 15, the business manager for the local, IBEW Local 702, had at least six counseling sessions with Mr. McAnally where he was telling him, Mr. McAnally, he had to stop abusing sick time. And his words were, you're digging a pit. And the pit fell in on him, not just because of his abuse, but because of his falsification for time slips. He would regularly leave work without telling anyone two or three hours early to go to chiropractic visits. Now, were those chiropractic visits related to his work or work-related injury? No. How do we know that? The jury found that. But not only that, the evidence was from the chiropractor, all of the visits that he saw through 2014, really the operative year here as to the facts for his discharge, were related to a collision with a deer. And that's why the chiropractor sent the bills to Pecan Insurance, the car insurance, rather than to the workers' comp insurance. Now, Judge Overstreet asked whether or not, Justice Overstreet asked whether or not the applications for adjustment of claim were filed. Answer, no. The April 2014 accident that Mr. McAnally had was investigated by the safety engineer. Mr. McAnally reported he wasn't injured, wasn't going to seek medical care. And that application for adjustment of claim wasn't filed until six months after he was discharged. The unrebutted evidence is that the September 14 claim wasn't filed until immediately before his discharge, and at the time of the discharge, Don Gulley, the president of SIPC, had no knowledge of it. So I guess we get to the issue of whether or not there is a lockstep law in Illinois where we expand Clark. There is not. This was John McAnally's case against Southern Illinois Power Cooperative. It's based on the facts, the causal facts in this case, in this case alone, are what control. And the jury found in favor of the defendant here. There's nothing in the brief or in the post-trial motions that meets the PEDRC standard. There's no basis for a new trial here. There was ample evidence to support the verdict. And I think that really, as I pointed out, the initial question that has to be answered is, are motions for summary determination of facts interlocutory? I believe they are. If there's any questions, I'll entertain them. Thank you. Well, yes. As predicted, he doesn't make any effort to distinguish grams at all. Didn't do it in the trial court. Didn't do it in his brief. Didn't do it in oral arguments. What about the merger doctrine? Let's say it's in the form of a motion for summary judgment. But the case went to jury and they heard all of the evidence. So can you appeal that? Your Honor, I'm appealing the fact because I didn't get a motion for summary determination of fact. And then I didn't get a jury instruction. Okay. So unless you're prepared to conclude as a matter of law that the jury, if they had been properly instructed, the jury would have ruled the same way, you can appeal. It has to lie, Your Honor. As I pointed out in the reply brief, we are entitled. We are entitled to a jury instructions that set out our theory of the case. And we were denied that. This is not a case, as the appellee would suggest, that where we are appealing manifest way to the evidence of the jury got it wrong. What we are appealing is that they did not get properly instructed. And that the law in the state of Illinois is that the employer may not unilaterally decide which is workers' compensation leave and which is sick leave, which is return to work status as opposed to workers' compensation leave. That is not what the employer can do. And in this case, what the employer did as to some later timesheets, they just unilaterally changed them. After September 30th, they just unilaterally changed. Mr. Crosby is wrong when he says that there were only two claims pending. I mean, I didn't put it in the appendix, but you'll find it in the record. The 2011 claim had not been settled at the time that they had this meeting in June 13th, 2013, where McAnally was told you cannot take this as sick leave. Now, with regard to the reference to... Oh, and then the chiropractor. The chiropractor testified in this case. Now, it is true that he billed McAnally's insurer for the deer accident, but he testified at trial that the pathology was related to all four instances. He never testified that it was only related to one instance. That's a complete mischaracterization of the record. Now, I'd like to read with regard to the union representative. You see, what they've done here is they've tried to convert my appeal into a manifest rate of the evidence argument. They mentioned he said he was leaving early and falsifying timesheets. They have put that in their brief, right? But you look at their answers to the interrogatories. Why was he fired? Sick leave. In the letter, why was he fired? Sick leave. It wasn't anything about falsifying timesheets or the like. None of that was the reason it was offered. And so the jury certainly could have believed the only reason he was fired was abuse of sick leave. In the interest of time, I would just want to urge the court, if you look at page 10 of my reply brief, I go into some length about what happened there about the digging of the pit. You know what the union representative said? He said, you're digging a pit because you are claiming this leave as sick leave. You need to claim it as workers' compensation leave. That's what he testified at the trial. That's why he was digging a pit. And as it turns out, the union rep was right because what they did was they fired him for abuse of sick leave when he should have been permitted to treat it as workers' compensation leave. Grant Holloway Clark, control. Thank you, Your Honor. Court will take a short recess.